# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF VIRGINIA
# NORFOLK DIVISION

| | |
|---|---|
| CENTRIPETAL NETWORKS, LLC, f/k/a CENTRIPETAL NETWORKS, INC., | ) ) ) No. 2:22-cv-00002-EWH-DEM |
| *Plaintiff*, | ) ) |
| vs. | ) ) ) |
| KEYSIGHT TECHNOLOGIES, INC., | ) ) |
| *Defendant*. | ) ) ) |

**MEMORANDUM IN SUPPORT OF PLAINTIFF CENTRIPETAL NETWORKS, LLC'S <u>MOTION TO LIFT STAY AND REOPEN THE CASE</u>**

## I. INTRODUCTION

Centripetal Networks, LLC ("Centripetal") moves to lift the stay entered by this Court only as to four patents[1] that are not the subject of instituted *Inter Partes* Review ("IPR") proceedings (the "Non-Instituted Patents"). The Court initially stayed this case pursuant to 28 U.S.C. § 1659 due to a pending action before the International Trade Commission ("ITC") involving three of the patents asserted here. Dkt. No. 57. The Administrative Law Judge ("ALJ") issued an Initial Determination ("ID") on August 8, 2023, and a Final Determination from the ITC is on the horizon—most likely before the end of the year—at which point that basis for a stay will no longer apply. When that occurs, this case should proceed and prepare for trial as to the Non-Instituted Patents without further delay.

## II. BACKGROUND

In 2017, Centripetal filed a prior litigation against Keysight, *Centripetal Networks, Inc. v. Keysight Technologies, Inc., and Ixia*, No. 17-cv-00383-HCM (E.D. Va.), which resolved in the middle of trial with Keysight agreeing to pay Centripetal past damages and royalties for a three-year license to Centripetal's patents. That license expired on December 31, 2021. Upon expiration of the license, Keysight continued to sell its infringing products, prompting Centripetal to file its Complaint on January 1, 2022, asserting infringement of 11 patents. Dkt. No. 1.

### A. The ITC Investigation

In an effort to prevent Keysight from continuing to import its infringing products into the United States, on April 19, 2022, Centripetal filed a complaint before the ITC seeking an exclusion order asserting three patents also asserted here: the '370 Patent, U.S. Patent No. 10,193,917 ("'917 Patent") and U.S. Patent No. 10,284,526 ("'526 Patent"). Dkt. No. 44-1, Ex. A (ITC Complaint).

---

[1] U.S. Patent Nos. 9,264,370 ("'370 Patent"), 10,659,573 ("'573 Patent"), 10,924,456 ("'456 Patent"), and 10,681,009 ("'009 Patent") do not have instituted IPR proceedings.

1

Keysight moved to stay this case on June 17, 2022, pending resolution of the ITC Investigation and represented that it intended to file IPR petitions against the Asserted Patents. Dkt. No. 43. The Court granted Keysight's motion on March 20, 2023, ordering that the case be stayed pending resolution of the ITC Investigation and requesting a status update within seven days of the ALJ issuing the ID. Dkt. No. 57.

On August 8, 2023, the ID from the ITC Investigation issued, and the ALJ found two claims of the '370 Patent—Claims 22 and 43—to be not infringed and invalid under 35 U.S.C. § 101, not obvious 35 U.S.C. § 101; found claims 11 and 20 of the '917 Patent to be infringed and invalid; and found claims 1, 3, 11, 13, and 16 of the '526 Patent not infringed and invalid. Declaration of Kristopher Kastens in Support of Motion to Lift Stay and Reopen the Case ("Kastens Decl."), Ex. 1 (Notice of Issuance of ID). Centripetal timely filed a petition for review of the ID to the ITC on August 23, 2023, as the ALJ made multiple errors of fact and law. Keysight did not file any petition for review. The ITC's decision regarding Centripetal's petition is due on or about October 23, 2023, however, the ITC may unilaterally grant itself an extension. According to the ITC's Adopted Procedural Schedule, the target date for completion of the Investigation is December 8, 2023. Dkt. No. 46-3, Ex. 2 (Attachment A at vii).

**B.    The IPRs**

Since the Complaint was filed, Defendant filed petitions for IPRs as to multiple, not all, Centripetal asserted patents. The Patent Trial and Appeal Board ("PTAB") instituted IPR proceedings for seven of the Asserted Patents: U.S. Patent Nos. 10,193,917, 10,284,526, 10,609,062, 10,511,572, 10,785,266, 10,567,343, and 11,012,474. Notably, Defendant did not file

IPR petitions against the '573 Patent,[2] the '456 Patent, or the '370 Patent, and it is now time barred from doing so. 35 U.S.C § 315(b). Defendant therefore cannot initiate any other IPR proceedings against the '573, '456, and '370 Patents that would effect a stay for these patents.

On March 22, 2023, the PTAB issued a decision denying institution of the '009 Patent. Kastens Decl., Ex. 2 (Decision Denying Institution of the '009 Patent). Keysight requested a rehearing on April 21, 2023 and the PTAB issued a decision on August 24, 2023 vacating the decision denying institution and remanding to the PTAB for further proceedings. Kastens Decl., Ex. 3 (Decision Vacating Denial and Remanding to PTAB). A decision whether to institute has yet to issue following the remand.

The following is a summary as to the status of the Non-Instituted Patents:

| Patent No. | IPR Petition Filed? | ITC Investigation? |
|---|---|---|
| '573 Patent | N/A | N/A |
| '456 Patent | N/A | N/A |
| '009 Patent | Not Instituted, Awaiting Decision | N/A |
| '370 Patent | N/A | Awaiting Final Determination |

### III.  ARGUMENT

Centripetal agrees to a continued stay of the case while its petition for review of the ID is pending before the ITC, but there is no basis to maintain the stay as to the Non-Instituted Patents once the ITC's determination becomes final. At that point, the Court's statutory basis for staying this case will no longer exist. The Court initially stayed this case pursuant to 28 U.S.C. § 1659

---

[2] The '573 Patent was previously the subject of an IPR petition filed by third-party Palo Alto Networks, Inc. and the PTAB denied institution on February 16, 2022. Kastens Decl., Ex. 4 ('573 Patent Decision Denying Institution).

3

which mandates the stay of a civil action involving parties that are also parties to an ITC Investigation, where the civil action involves the same issues as in the ITC proceeding, until the determination of the ITC becomes final. Dkt. No. 57 at 5. When the ITC issues its Final Determination, that rule will no longer apply and the case can proceed.

Further, the discretionary factors considered by this Court in granting the stay weigh against a continued stay as to the Non-Instituted Patents. Indeed, a continued stay is unwarranted because it is unlikely to "simplify the matters at issue" before the Court and "would unduly prejudice or clearly disadvantage" Centripetal. Dkt. No. 57 at 6, 9; *Centripetal Networks, Inc. v. Cisco Sys., Inc.*, No. 2:18cv94, 2019 WL 8888195, at *2, *4 (E.D. Va. Sept. 18, 2019) (lifting a stay as to patents no longer subject to other judicial proceedings even though other asserted patents were still under judicial review elsewhere, because it would prejudice the patentee to continue the stay); *see also* Kastens Decl., Ex. 5 (*Centripetal Networks, LLC v. Palo Alto Networks, Inc.*, No. 2:21-cv-0137, Dkt. No. 336 (E.D. Va. May 17, 2023) (lifting stay as to seven asserted patents that the Patent Trial and Appeal Board either declined to review or found valid upon review).

**A.     Maintaining the Stay Will Not Simplify Issues**

The Court should lift the stay for the Non-Instituted Patents because they are not the subject of IPR proceedings, and three of the Non-Instituted Patents ('009 Patent, '573 Patent, and '456 Patent), are not the subject of the ITC's Final Determination. The ITC Investigation also does not involve Keysight's BreakingPoint products that are accused of infringement in this case, such that the ITC's Final Determination will not address all the issues of Keysight's infringement that will need to be litigated here.

The '573 and '456 Patents are neither in the IPR process nor subject to the ITC Investigation, and a stay would not simplify any issues with respect to these patents. Any argument that other Centripetal's patents under review may simplify the issue for those patents is entirely

4

speculative, and should not be basis to maintain the stay. As stated above, Keysight is time-barred from initiating IPR proceedings against these two patents.

Further, the PTAB had determined not to institute IPR proceedings against the '009 Patent. While Director review vacated the decision not to institute and remanded it for further review just a few days ago on August 24, 2023, the PTAB has not instituted IPR proceedings against this patent and there is no indication that it will institute proceedings, and, as such, it is entirely speculative whether the PTAB will grant the petition[3]. *SAGE Electrochromics, Inc. v. View, Inc.*, No. 12-cv-06441-JST, 2015 WL 66415, at *3 (N.D. Cal. Jan. 5, 2015) ("[T]he uncertainty surrounding whether the PTO will elect to institute IPR proceedings weighs against a finding of likelihood of simplification of the issues."); *Rensselaer Polytechnic Inst. v. Apple, Inc.*, No. 1:13-CV-0633-DEP, 2014 WL 201965, at *8 (N.D.N.Y. Jan. 15, 2014) ("I find that whether any issues attendant to this litigation may [sic] simplified through the IPR process is speculative primarily in light of the fact that the PTO has yet to accept or deny Apple's petitions for further review."); *Automatic Mfg. Sys., Inc. v. Primera Tech., Inc.*, C.A. No. 6:12-cv-1727, 2013 WL 1969247, *3 (M.D. Fla. May 13, 2013) ("[A] stay of a patent infringement action is not warranted when based on nothing more than the fact that a petition for *inter partes* review was filed in the USPTO.").

Similarly, upon the ITC's determination becoming final, the Court should lift the stay of the '370 Patent because the statutory basis for staying the case will cease to exist. Moreover, the ITC's Final Determination as to the '370 Patent is with respect to only two patent claims, leaving the remaining 16 independent claims of the '370 Patent unaddressed by the ITC Final Determination. Furthermore, the ITC's Final Determination as to two of the claims of the '370

---

[3] In the event the PTAB institutes IPR proceedings against the '009 Patent, Centripetal is willing to stay the case as to that patent, but doing so now is premature.

Patent do not have any binding effect on this Court as to those claims or any other asserted claims of the '370 Patent, such that it will not necessarily simplify issues in this case. *Tex. Instruments Inc. v. Cypress Semiconductor Corp.*, 90 F.3d 1558, 1569 (Fed. Cir. 1996) ("The [ITC]'s findings neither purport to be, nor can they be, regarded as binding interpretations of the U.S. patent laws" and thus, do "not have res judicata or collateral estoppel effect" in district court.) (quoting S. REP. No. 93-1298, at 196 (1974), *reprinted in* 1974 U.S.C.C.A.N. 7186, 7329); Dkt. No. 46-4, Ex. 4 (*Bushnell Hawthorne, LLC v. Cisco Sys., Inc.*, No. 1:18-cv-00760, Dkt. No. 88 (E.D. Va. Apr. 22, 2019)); *In re Convertible Rowing Exerciser Pat. Litig.*, 721 F. Supp. 596, 603-04 (D. Del. 1989) (denied defendants' motion for summary judgment of invalidity despite prior ITC determination of no violation of section 337 based on invalidity). As such, the stay should be lifted as to the Non-Instituted Patents after the ITC issues its Final Determination.

### B. Centripetal Suffers Undue Prejudice if the Stay is Not Lifted

Maintaining a stay of the four Non-Instituted Patents, even after the ITC's determination becomes final, would prejudice Centripetal, as Centripetal and Defendant are direct competitors, and continued delay inflicts irreparable harm to Centripetal, including undue harm to its business reputation, which is not solely compensable by monetary damages.

#### 1. The Parties are Direct Competitors

Centripetal and Keysight are direct competitors, and this weighs against maintaining a stay as to the Non-Instituted Patents, such that there can be timely adjudication of Centripetal's patent infringement claims. Dkt. No. 46-3, Ex. 3 at 3 (*Pulse Elecs., Inc. v. U.D. Elec. Corp.*, No. 3:18-cv-00373-BEN-MSB, Dkt. No. 52 (S.D. Cal. Nov. 18, 2019) ("Staying a case while such harm is ongoing usually prejudices the patentee that seeks timely enforcement of its right to exclude.") (citations omitted)). Since the first litigation Centripetal brought against Keysight in 2017, Keysight has willfully infringed Centripetal's patents and continues to do so, irreparably hurting

Centripetal's market share and reputation. Dkt. No. 1, ¶¶ 55-64, 77, 134, 163, 192, 222, 254, 311, 340, 369; *Centripetal Networks, Inc. v. Cisco Sys., Inc.*, 492 F. Supp. 3d 495, 585 (E.D. Va. 2020), *vacated and remanded on other grounds by* 38 F.4th 1025 (Fed. Cir. 2022) (finding that the Keysight royalty in the Term License Agreement "was instituted for products that directly compete with Centripetal's" products). After the expiration of Keysight's Term License, Centripetal immediately filed its lawsuit to resolve its infringement claims against Keysight in order to secure an injunction to stop its willful infringement.

Competition is a particularly relevant factor in cases like this where some but not all of the asserted patents are subject to administrative proceedings with courts finding that stays of the entire case are not warranted where the parties are competitors. For example, in *Power Integrations, Inc. v. Fairchild Semiconductor, Int'l, Inc.,* the district court allowed the case to proceed as to two asserted patents that were not subject to administrative proceedings, while keeping the stay in place for four other patents still subject to such proceedings. *See* No. 15-cv-04854-MMC, 2019 U.S. Dist. LEXIS 25375, at *8-9 (N.D. Cal. Feb. 14, 2019). The court in *Power Integrations* held that maintaining the stay "on a patent claim as to which there remains no challenge pending elsewhere could potentially result in protracted competitive harm to the patentee" since the parties were competitors. *Id*. at *9. Additionally, in *Pulse Electronics*, the court declined to continue a stay for three of the four asserted patents that were not subject to administrative review, finding a continued stay pending administrative review of the other patent presented substantial risk of undue prejudice to plaintiff, as "infringement among competitors can cause harm in the marketplace" not readily compensable by money damages. Dkt. No. 46-3, Ex. 3 at 3-4. Further, in a prior litigation involving Centripetal and competitor Cisco Systems*,* this Court, in a similar factual circumstance, held that Centripetal would be prejudiced by a continued

7

stay particularly because Centripetal and Cisco were competitors, if the case were not to proceed with respect to the asserted patents that were not currently in IPR proceedings and thus allowed the case to proceed. *Centripetal Networks, Inc.*, 2019 WL 8888195, at *3-4.

Thus, because the parties are competitors, this factor weighs heavily against maintaining a stay against the Non-Instituted Patents.

### 2. A Stay Significantly Risks Prejudice to Timeliness of Relevant Discovery

By the time the ITC's determination becomes final, this case will have already been stayed for about nine months, and would have been pending for nearly two years. Maintaining the stay after the Final Determination issues risks that memories and perceptions have eroded. The risks of further prejudice to Centripetal's ability to enforce its patents are particularly significant here, where Defendant directly competes with Centripetal, and only Defendant benefits from further staying the litigation without reasonable justification after the ITC's Final Determination. This outcome would be unjust, particularly as the majority of the issues in this case do not overlap with the ITC Investigation, including the accused Keysight BreakingPoint products, the remaining 16 independent claims of the '370 Patent, and the other three Non-Instituted Patents.

## IV. CONCLUSION

For the foregoing reasons, Centripetal respectfully requests the Court lift the stay of the case as to the Non-Instituted Patents upon the ITC's Final Determination.

                Respectfully submitted,

Dated: August 28, 2023      By: */s/Stephen E. Noona*
                Stephen E. Noona
                Virginia State Bar No. 25367
                KAUFMAN & CANOLES, P.C.
                150 West Main Street, Suite 2100
                Norfolk, VA 23510
                Telephone: (757) 624-3239
                Facsimile: (888) 360-9092
                senoona@kaufcan.com

                Paul J. Andre (*pro hac vice*)
                Lisa Kobialka (*pro hac vice*)
                James R. Hannah (*pro hac vice*)
                Kris Kastens (*pro hac vice*)
                Hannah Y. Lee (*pro hac vice*)
                KRAMER LEVIN NAFTALIS
                 & FRANKEL LLP
                333 Twin Dolphin Drive, Suite 700
                Redwood Shore, CA 94065
                Telephone: (650) 752-1700
                Facsimile: (650) 752-1800
                pandre@kramerlevin.com
                lkobialka@kramerlevin.com
                jhannah@kramerlevin.com
                kkastens@kramerlevin.com
                hlee@kramerlevin.com

                *Attorneys for Plaintiff,*
                Centripetal Networks, LLC

## **CERTIFICATE OF SERVICE**

I hereby certify that on August 28, 2023, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will automatically send notification of filing electronic to all counsel of record.

*/s/ Stephen E. Noona*
Stephen E. Noona
Virginia State Bar No. 25367
KAUFMAN & CANOLES, P.C.
150 West Main Street, Suite 2100
Norfolk, VA 23510
Telephone: (757) 624-3239
Facsimile: (888) 360-9092
senoona@kaufcan.com
