**IN THE UNITED STATES DISTRICT COURT FOR
THE EASTERN DISTRICT OF VIRGINIA
NORFOLK DIVISION**

| | | |
|---|---|---|
| CENTRIPETAL NETWORKS, LLC, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 2:22-cv-00002-EWH-DEM |
| | ) | |
| KEYSIGHT TECHNOLOGIES, INC., | ) | |
| | ) | |
| Defendant. | ) | |

**DEFENDANT'S OPPOSITION TO PLAINTIFF'S
MOTION TO LIFT STAY AND REOPEN THE CASE**

## I.    INTRODUCTION

Plaintiff Centripetal Networks, LLC's ("Centripetal") prospective bid to partially lift the stay three months from now, on four of the eleven asserted patents, is wrong on the law and the merits. As to the law, Centripetal incorrectly asserts that the mandatory stay under 28 U.S.C. § 1659 may be lifted upon issuance of the International Trade Commission's ("ITC") Final Determination, expected in December. To the contrary, ITC proceedings are not final – and the mandatory stay may not lift – until after all appeals and possible remands.

As to the merits, Centripetal's argument that a continued stay on all patents will not simplify issues makes no more sense now than it did when the Court granted the stay earlier this year. Indeed, this case is postured similarly to Centripetal's litigation against Palo Alto Networks at the time the Court rejected Centripetal's motion to lift the stay there after the PTAB had issued all of its institution decisions but had not reached final written decisions. *Centripetal Networks, LLC v. Palo Alto Networks, Inc.*, No.2:21-cv-0137, Dkt. No. 285 (E.D. Va. March 1, 2022) ("*PAN*"). The Court recognized, among other things, that the ongoing IPRs on the majority of the patents-in-suit

favored continuing the stay, and that judicial efficiency favored addressing the patent claims as a "convenient unit."[1] *PAN*, Dkt. No. 317 at 3.

The result here should not be different. If anything, the case for a continued stay here is even stronger due to the parallel ITC proceedings, in addition to the instituted IPRs. Whereas the Court continued the stay in the *PAN* case when seven out of thirteen (54%) asserted patents were subject to instituted IPRs, here, eight out of the eleven (73%) asserted patents are subject to instituted IPRs and/or are part of the ITC action. In addition, the Director of the PTAB recently vacated the Board's lone decision not to institute IPR and remanded for the Board to reconsider whether to institute. If the Board institutes, that will bring the total to nine of eleven (82%) asserted patents that are subject to instituted IPRs and/or are part of the ITC action. In other words, the fates of the vast of the asserted patents are still to be determined in proceedings that are ongoing before the ITC and/or PTAB. Accordingly, either a significant amount of this case will never return because the patents are invalidated, or at a minimum, the issues to be decided will be streamlined based on the developments in those proceedings.

Centripetal ignores a fundamental inefficiency that would result based on its proposed partial lift of the stay as to four patents not subject to instituted IPRs: the '370 Patent, the '573 Patent, the '456 Patent and the '009 Patent (if IPR is instituted on the '009 Patent, Centripetal concedes it should remain stayed). The '370 Patent is part of the ITC action, wherein the ALJ found (1) Keysight did not infringe it on multiple independent grounds; (2) it was invalid as ineligible subject matter under 35 U.S.C. § 101; and (3) Centripetal did not practice it (and thus failed to meet the technical prong of domestic industry). The '573 Patent is related to, and shares a common specification and multiple overlapping claim terms with, the '370 Patent. Thus, the claim construction, non-infringement and invalidity issues that are being litigated at the ITC -- and to the

---

[1] The Court would later lift the stay in the *PAN* case, approximately six months later, but only after all the instituted IPRs reached final written decision, and then only as to the patents that were not invalidated in the IPR process. *PAN*, Dkt. No. 336.

extent any appeals flow therefrom, at the Federal Circuit -- will necessarily provide useful guidance not only as to the '370 Patent but also the '573 Patent. And, if the '573 Patent were to move forward while the '370 Patent is still being litigated or appealed, there would be the danger of potentially inconsistent rulings or results.

Of course, there are much broader issues with moving forward on a small minority of the patents now while the vast majority remains stayed, given the relationship between them such as overlapping inventors, claim terms, and subject matter. Proceeding on a minority of patents now creates substantial risk of inefficiency, waste of resources, and/or inconsistent decisions.

Turning to unfair prejudice, there too Centripetal's arguments fall short. At the threshold, although Centripetal tries to paint the parties as competitors, it offers no evidence to support its assertion. And indeed, the parties are not competitors:

As Centripetal is aware, over a year ago, in August 2022, Keysight discontinued the only product (called ThreatARMOR) that even conceivably once competed with Centripetal's lone product (called RuleGate or more recently CleanINTERNET). Nonetheless, as the Court previously found, the availability of monetary damages is more than adequate to address any alleged prejudice to Centripetal during the stay period.[2]

Finally, Centripetal's continued assertions of prejudice are inconsistent with the choice Centripetal made to proceed outside of this forum. Having filed in this Court first, it then chose to initiate an action in the ITC several months later, opting for the speed that forum offers, while fully cognizant that it could lead to a stay of the entire action in this Court. It chose which patents and

---

[2] In view of Centripetal's highly-charged (but factually unsupported) allegations of willful infringement and competitive harm, some further context regarding the parties' prior license bears mention. The prior license resolved a prior patent litigation between the parties in which Centripetal asserted claims of six patents against Keysight. All six of those patents (or asserted claims from them) have since been found invalid by the PTAB and/or the ITC. For that matter, it is also noteworthy that of the 16 patents Centripetal has asserted against Keysight between the prior litigation and this round of litigation, the PTAB and/or the ITC has found 13 (in whole or in part) invalid or determined there is a reasonable likelihood they will be found invalid (and that will increase to 14 if institution on the '009 Patent is granted).

which specific claims to assert there – undoubtedly what it thought were the best of the bunch – and which Keysight products to accuse there, and it sought an exclusion order aimed to remedy the theoretical "competitive" harm. Thus far, though, Centripetal has not gotten the result it wanted at the ITC. But disappointment is not prejudice, and certainly not prejudice sufficient to overcome all the prudential considerations that weigh heavily in favor of continuing the stay.

The Court should thus deny Centripetal's motion to lift the stay. Keysight suggests that the Court schedule a status conference after the last final written decision on the IPRs issues.[3] In addition to having the landscape on the final written decisions in the IPRs, at that time, there should be more visibility as to whether any appeal from the ITC action has been taken, and its timeline.

## II.    BACKGROUND

### A.  Procedural History

On January 1, 2022, Centripetal filed its Complaint in this action, alleging infringement of eleven patents.[4] *See* Compl., Dkt. No. 1, ¶¶ 13-23. Although the allegations were unclear, Centripetal levied its infringement allegations, depending on the patent, against several categories of Keysight products, including its Vision series of products, its ThreatARMOR product, and its BreakingPoint products. *Id.* at ¶¶ 38, 49, 50. In February 2022, Keysight moved to dismiss, which the Court later denied without prejudice in connection with its Order staying the action in March 2023, as discussed in further detail below. *See* Dkt. Nos. 25, 26 and 57.

Meanwhile, in April 2022, over four months after filing its Complaint in this action, Centripetal filed a complaint with the ITC, asserting alleged infringement by Keysight of three of the eleven Asserted Patents in this case: the '370 Patent, the '917 Patent, and the '526 Patent ("the

---

[3] The last final written decision is currently set for August 7, 2024.

[4] U.S. Patent Nos. 9,264,370 ("the '370 Patent"), 10,193,917 ("the '917 Patent"), 10,284,526 ("the '526 Patent"), 10,511,572 ("the '572 Patent"), 10,567,343 ("the '343 Patent"), 10,609,062 ("the '062 Patent"), 10,659,573 ("the '573 Patent"), 10,681,009 ("the '009 Patent"), 10,785,266 ("the '266 Patent"), 10,924,456 ("the '456 Patent"), and 11,012,474 ("the '474 Patent") (collectively, "the Asserted Patents"). *See* Compl., Dkt. No. 1, ¶¶ 13-23.

ITC-Instituted Patents"). *See* ITC Complaint, Exhibit A to Dkt. No. 44. Centripetal's assertions of infringement of the '370 and '526 Patents were directed to Keysight's Vision series of products, and its assertion of infringement of the '917 Patent was directed to Keysight's ThreatARMOR product. *Id*. Centripetal did not accuse Keysight's BreakingPoint products of infringement in the ITC. The ITC instituted the investigation in May. *See* 87 Fed. Reg. 31,581 (May 24, 2022); *see also* Notice, Dkt. No. 42.

The next month, Keysight moved to stay this action until resolution of the ITC investigation. Dkt. No. 43. In its supporting memorandum, Keysight explained that it was also in the process of preparing and filing multiple IPR requests with the PTAB. Dkt. No. 44. In total, Keysight filed IPR requests on eight of the eleven asserted patents and notified the Court accordingly. Dkt Nos. 53, 54. On March 20, 2023, the Court granted Keysight's Motion To Stay. Dkt. No. 57. The Court concluded that the early stage of the litigation favored a stay, noting that "[n]o scheduling order has been entered and the parties have yet to begin discovery." *Id*. at 7. Further, the Court recognized that even though the ITC investigation would not resolve all of the issues between the parties, "a stay will still greatly simplify the matters before the Court" and that the ITC record "will assist the Court with claim construction regarding any common terms and will potentially inform this Court's analysis regarding invalidity or non-infringement defenses for the two non-instituted but related patents." *Id*. at 9. As to potential unfair prejudice to Centripetal, the Court accepted, for purposes of the motion and in view of the early stage of the case, Centripetal's assertion that the parties are competitors, but concluded that "Centripetal has not demonstrated that monetary damages are insufficient to compensate it for Keysight's alleged infringement, especially considering that it previously licensed its patent portfolio to Keysight." *Id*. at 11.

At that time, the PTAB had instituted one of the eight IPRs Keysight had sought, while institution decisions on the other seven were still outstanding. *Id*. at 9-10. Thus, while it stayed the entire case at that time, the Court observed that it would be in a better position to evaluate whether

to continue that stay in August 2023, after the ITC's initial determination, at which point the institution decisions from the PTAB on the remaining IPRs would be complete. *Id*.

Procedurally, of course, the case remains in its infancy now, as it was before the Court entered the stay. The pleadings have not been joined. No scheduling order has been entered. Nor has any discovery taken place.

Meanwhile, the IPR institution decisions that the Court, in its Stay Order, indicated would be ripe to revisit after the ITC's initial determination have all been decided in favor of institution, aside from one which is being reconsidered on the Director's order. Specifically, the PTAB instituted IPRs on six additional patents, bringing the total number of IPR-instituted patents to seven. As for the patent that is the subject of the lone IPR on which the PTAB denied institution, after the PTAB Director *sua sponte* initiated review of the non-institution, she vacated the decision and instructed the Board to reconsider it on the merits. *See Keysight Technologies, Inc. v. Centripetal Networks, Inc.*, IPR2022-01421, Paper 14 (P.T.A.B. Aug. 24, 2023). The status of each of the eleven Asserted Patents is summarized as follows:

| Patent No. | IPR Case No. | IPR Filing Date | Date/Outcome of Institution Decision | Date Final Written Decision Expected/Due | Asserted In ITC? |
|---|---|---|---|---|---|
| 9,264,370 | *Not eligible for IPR* | | | | Yes |
| 10,193,917 | IPR2022-01097 | June 2, 2022 | Dec. 19, 2022 IPR Instituted | Dec. 19, 2023 | Yes |
| 10,681,009 | IPR2022-01421 | Aug. 12, 2022 | Aug. 24, 2023 Denial of Institution Vacated and Remanded | | No |
| 10,284,526 | IPR2022-01525 | Sept. 12, 2022 | April 17, 2023 IPR Instituted | April 17, 2024 | Yes |
| 10,609,062 | IPR2022-01535 | Sept. 13, 2022 | April 18, 2023 IPR Instituted | April 18, 2024 | No |

| 10,511,572 | IPR2022-01607 | Sept. 30, 2022 | April 17, 2023 IPR Instituted | April 17, 2024 | No |
|---|---|---|---|---|---|
| 10,785,266 | IPR2023-00445 | Jan. 6, 2023 | July 24, 2023 IPR Instituted | July 24, 2024 | No |
| 10,567,343 | IPR2023-00446 | Jan. 6, 2023 | August 7, 2023 IPR Instituted | August 7, 2024 | No |
| 11,012,474 | IPR2023-00448 | Jan. 6, 2023 | July 24, 2023 IPR Instituted | July 24, 2024 | No |
| 10,659,573 | Not challenged by Keysight | | | | No |
| 10,924,456 | Not challenged by Keysight | | | | No |

In sum, eight of the eleven Asserted Patents are now subject to the ITC proceedings and/or IPR review, while a ninth has been remanded for further reconsideration of IPR institution.

As for the ITC proceedings, the trial took place March 1-7, 2023. Following the trial, the parties and the Staff Attorney representing the Office of Unfair Imports and Investigations ("OUII") submitted multiple rounds of post-hearing briefing. Notably, the Staff independently concluded that no violation by Keysight should be found because the evidence had shown all three asserted patents to be invalid, two of the three asserted patents not infringed, and that Centripetal had failed to establish it practiced one of the three asserted patents and thus did not meet the ITC's technical domestic industry requirement.

On August 8, 2023, Administrative Law Judge ("ALJ") MaryJoan McNamara issued her Initial Determination ("ID"), finding Keysight had not committed a violation and ruling that all three asserted patents were invalid, two of the three were not infringed, and Centripetal failed to meet the technical domestic industry requirement on one of the three. *See* Initial Determination on Violation of Section 337 with Recommendation on Remedy, filed in *Certain Computer Network Security Equipment and Systems, Related Software, Components Thereof, and Products Containing*

*Same*, Inv. No. 337-TA-1314 (August 8, 2023) (Public Version) (Exhibit 1). ALJ McNamara detailed her findings in a 286-page opinion. Specifically, she determined that (1) the '370 Patent was (a) not infringed by Keysight, (b) invalid as patent-ineligible subject matter under 35 U.S.C. § 101 and (c) and not practiced by Centripetal, which thus failed to meet the technical domestic industry requirement in the ITC; (2) the '917 Patent was invalid as obvious under 35 U.S.C. § 103; and (3) the '526 Patent was (a) not infringed and (b) invalid as anticipated under 35 U.S.C. § 102. *Id*.

On August 23, 2023, Centripetal filed a petition requesting that the Commission review the ID and challenging every ruling on which it had lost. Keysight did not petition the Commission to review any of the ID's rulings. On September 1, 2023, Keysight filed its response to Centripetal's petition for review, urging the Commission to reject it. Also on September 1, 2023, the Staff responded to Centripetal's petition for review, and likewise urged the Commission to reject it. In its Summary of its Response, the Staff stated:

> OUII submits that the FID [Final Initial Determination] correctly found across the board that Centripetal failed to prove a violation of Section 337. Centripetal's arguments to the contrary frequently misrepresent the FID's findings, lack evidentiary support, ignore contrary evidence, and in many cases are new arguments never presented to the ALJ.

ITC Inv. No. 337-TA-1314, Summary of the Resp. of the OUII to Complainant Centripetal Networks, LLC's Petition for Review of the ID (Sept. 1, 2023) (Confidential filing); *see also, generally*, Resp. of the OUII to Complainant Centripetal Networks, LLC's Petition for Review of the ID (Sept. 1, 2023) (Confidential filing) (characterizing Centripetal's arguments as "wrong" over a dozen times).

The Commission's decision on Centripetal's petition for review is due by October 9, 2023. *See* 37 C.F.R. § 210.42(h)(2) (60 days after service of ID). The target date for the Commission's completion of the investigation is December 8, 2023. *See* ITC Inv. No. 337-TA-1314, Order No. 3 (June 1, 2022).

In sum, nine of the eleven asserted patents in this action remain subject to ongoing proceedings in IPRs and/or the ITC. Of the two patents that are not part of an ongoing IPR or ITC proceeding – the '573 Patent and the '456 Patent – the '573 Patent is in the same family as – and shares a common specification and multiple overlapping claim terms with – the '370 Patent.   As part of its petition for review in the ITC, with respect to the '370 Patent, Centripetal has challenged the ALJ's rulings relating to (1) claim construction, (2) invalidity under Section 101, (3) Keysight's non-infringement, and (4) Centripetal's failure to practice the patent. Both the '573 and '456 Patents have at least two named inventors that overlap with patents that are the subject of the ITC and the IPRs.

Across this litigation and the prior litigations, Centripetal has asserted 16 patents against Keysight. Of those 16 patents, 13[5] either have been found invalid by the PTAB and/or the ITC, or the PTAB has initiated IPRs based on the reasonable likelihood they will be found invalid. (For all of these patents, these findings are either in full as to all claims of the patent or at least as to asserted claims).[6] From this vantage point, the efficiencies to be gained through the other proceedings is plain.

### B.  The Parties' Respective Products

A brief summary of the parties and their respective products also helps frame some of the issues that may be evaluated in assessing whether to continue the stay, particularly the absence of competition between the parties. By way of background, Keysight descends from the original Hewlett-Packard ("HP"), which later spun out some of its business lines into a business named Agilent Technologies, which, in turn, spun out its test and measurement business line into Keysight

---

[5] If the PTAB institutes IPR on the '009 Patent following the Director's vacation of its non-institution decision, this number will increase to 14.

[6] Centripetal also has initiated infringement proceedings against Keysight in Germany on three European patents. To date, two of the three patents there have been found invalid, and the court's preliminary findings on the third are to find it invalid as well; the parties await a hearing date on the invalidity proceeding concerning that patent.

in 2014. In 2017, Keysight acquired Ixia, where many of the products at issue in this action had been developed.

As noted above, Centripetal accuses a few categories of Keysight products and their accompanying hardware and software components of infringing the Asserted Patents. Those include (1) Keysight's "Network Visibility Products," known as its "Vision" line of products (Compl., Dkt. No. 1, ¶¶ 38-46), (2) Keysight's "ThreatARMOR" threat intelligence product (*id.*, ¶49), and (3) Keysight's "Testing Products" marketed under the name "BreakingPoint" (*id.*, ¶¶ 50-51).[7] The first two categories (the "Vision" products and ThreatARMOR) also are at issue in the ITC investigation, but Centripetal elected not to accuse the BreakingPoint products in that investigation.

Keysight's ThreatARMOR product is what is known as a threat intelligence gateway. *See id.*, ¶49. Threat intelligence gateways are typically used to detect and block "bad" network traffic (*i.e.*, viruses, malware, distributed denial of service (DdoS) attacks) before it enters a company's internal network. The market demand for these products, however, proved to be limited. Indeed, with the advancements in firewalls and increased use of cloud-based storage, the threat intelligence gateway market never really developed and ThreatARMOR's lagging sales did not justify continued investment in the product. Accordingly, over a year ago, in August 2022, Keysight put ThreatARMOR into Keysight's end-of-life process.

Next, Keysight's "Vision" series of products are devices known as network packet brokers. *See, e.g.*, Compl., ¶ 73. Network packet brokers sit between a production network (like the internet) and specialized third-party monitoring tools and selectively send certain traffic (or a copy thereof)

---

[7] Centripetal also makes accusations against Keysight's "Network Tap Products" and "Bypass Switch Products," which are basic hardware components (Compl., ¶¶ 47-48), and Keysight's "Ixia Fabric Controller" (*id.*, ¶ 52). It is unclear whether or how Centripetal contends these particular products infringe, and it made no reference to them in its Motion To Lift Stay. It is undisputed, however, that Centripetal sells no such products, just as it does not sell network packet brokers or network testing products.

to those monitoring tools. In addition, packet brokers provide visibility into network traffic and allow for network monitoring, load balancing, and advanced filtering which can be used to improve network performance. Notably, Centripetal does not sell network packet brokers.

Finally, there are the "Testing Products," which includes the BreakingPoint products that Centripetal referenced in its Motion to Lift the Stay. As the name of the category implies, these products are used for network testing, *i.e.*, simulating real-world traffic to assess the effectiveness of a party's network security platform. Centripetal does not sell testing products.

As for Centripetal, it has a single product offering, namely, its "CleanINTERNET" solution, which it characterizes as a threat intelligence gateway. *See* Compl., ¶ 10; *see also* Centripetal's Statement on the Public Interest (submitted with ITC Complaint) at p. 4, Exhibit A to Dkt. No. 44 ("Centripetal domestically researches, develops, engineers, and tests its CleanINTERNET solutions to customers, which are Threat Intelligence Gateway systems…"); *see also* https://www.centripetal.ai/cleaninternet/.

As the Court observed in its prior Stay Order, there was a prior license between the parties. Under that license, which resolved an earlier litigation between the parties with no admission of liability by either party, Centripetal licensed its entire worldwide patent portfolio to Keysight.[8] The license expired on December 31, 2021. By virtue of the license, there is no recovery available, and Centripetal does not seek damages, before January 1, 2022. As for the period after January 1, 2022,

_____

[8] Centripetal was unhappy with the amount of the royalty payments under the license, and just over a year into the license term it initiated arbitration, claiming Keysight was underpaying and had defrauded it into entering the agreement. The parties arbitrated the dispute before the Honorable Bradford Stillman (whom they had previously agreed upon in the settlement/license agreement), in December 2021, who rejected all of Centripetal's claims in his Award, which adopted all of Keysight's proposed findings of fact and conclusions of law and granted Keysight's dispositive motion on two of Centripetal's theories, and found entirely in Keysight's favor in a ruling issued in July 2022. Centripetal stipulated to confirmation of the Award in January 2023. *See In the Matter of the Application of Keysight Techs., Inc., and Ixia*, Case No. CL22016340-00 (Va., Norfolk Circuit Court, Jan. 31, 2023) (Final Order).

for the discontinued ThreatARMOR product there have been a total of three U.S. sales. Declaration of Rajat Sharma ISO Defendant's Response to Mtn. to Lift Stay, ¶ 3 (Exhibit 2).

## III.    ARGUMENT

Centripetal's motion misses the mark across the board. At the threshold, because the ITC investigation is ongoing, the three patents asserted there, including the '370 Patent on which Centripetal seeks to lift the stay, remain subject to the mandatory stay requirement of 28 U.S.C. § 1659(a). That stay remains mandatory not just through the ITC's Final Determination, expected in December, but until all appeals are exhausted.

Turning to the eight non-ITC patents that are discretionarily stayed, and for which Centripetal seeks to lift the stay as to three, all should remain stayed.  The discretionary factors on which the Court relied to previously stay the entire case continue to apply, and additional discretionary considerations – including seven of eleven Asserted Patents subject to instituted IPRs and an institution decision pending on an eighth patent – have only further strengthened the arguments in favor of maintaining a stay of the entire case.

### A.    The Stay Must Continue With Respect To All The ITC-Instituted Patents.

In initially granting the stay, the Court applied the mandatory stay provision of 28 U.S.C. § 1659(a), which provides that, upon timely request, "the district court shall stay, until the determination of the Commission becomes final, proceedings in the civil action with respect to any claim that involves the same issues involved in the proceeding before the Commission." 28 U.S.C. § 1659(a). The current ITC investigation has not yet concluded. Centripetal filed a petition for Commission review on August 23, 2023, and the ITC's Final Determination is due on December 8, 2023. Contrary to Centripetal's assertions in its Motion, however, the Final Determination will not necessarily conclude the ITC investigation, as appeals from the Final Determination may be pursued.

In that regard, the Federal Circuit has held that "finality" in the context of Section 1659 only attaches after all appeals have been exhausted. *See In re Princo Corp.*, 486 F.3d 1365, 1369 (Fed. Cir. 2007). In *In re Princo,* the Federal Circuit analyzed the purpose of the mandatory stay during ITC proceedings, which it explained is to prevent infringement proceedings from occurring "in two forums at the same time." *Id*. at 1368. It noted that this purpose cannot be achieved if the stay does not extend to proceedings on appeal. A Commission proceeding is not final, therefore, until all appeals are exhausted. *Id*. at 1369; *see also Kyocera Senco Indus. Tools, Inc. v. Koki Holdings Am. Ltd.*, Civil Action No. 17-598-CFC, 2022 U.S. Dist. LEXIS 230104, *4-5 (D. Del. Dec. 21, 2022) (denying plaintiff's motion to lift stay because "the ITC's termination of its investigation remains subject to judicial review by the Federal Circuit").

It follows, therefore, that this Court may not lift the stay with respect to the '370 Patent until all appeals are exhausted – including the Federal Circuit – and the ITC investigation truly concludes.[9]

**B.      The Stay Of The Entire Action Should Continue.**

As the Court is familiar, in evaluating whether to exercise their inherent power to stay (or continue to stay) proceedings in the interest of judicial economy, courts in this district weigh three factors: "(i) the stage of the litigation, including whether discovery is complete and a trial date is scheduled, (ii) whether a stay would simplify the matters at issue, and (iii) whether a stay would unduly prejudice or clearly disadvantage the non-moving party." *See* Dkt. No. 57 at 6 (citing *In re TLI Communs. LLC, Patent Litig.*, No. MDL No. 1:14md2534, 2014 U.S. Dist. LEXIS 182206, at *6 (E.D. Va. Aug. 11, 2014) (granting stay of district court proceedings based on the filing of IPR petitions)). As discussed above, this Court previously found that the factors weighed in favor of

---

[9] This also applies to the '917 and '526 Patents asserted in the ITC, although Centripetal concedes the stay should continue on those patents as they also are the subject of IPRs.

granting a stay. And indeed, those factors that warranted a stay in March 2023 not only remain today but have further strengthened the arguments in favor of maintaining the stay.

### (i)    The Case Remains In Its Infancy.

Centripetal does not address the stage of the case factor in its motion, but it is undisputed, of course, that the case remains in its infancy. As noted above, the pleadings are not joined, no scheduling order has been entered, and no discovery has been taken. Thus, this factor continues to favor staying the entire action.

### (ii)    Continuing The Stay Of The Entire Action Best Serves Judicial Efficiency.

Centripetal's request to lift the stay as to four of the eleven Asserted Patents would disserve judicial efficiency interests, whereas continuing the stay of the entire action would best serve those interests. The starting point for the inquiry on this factor is where the Court left off in its prior Stay Order. At that point, the ITC investigation was pending on three of the eleven Asserted Patents, the PTAB had instituted IPR on one of the eleven Asserted Patents, and institution decisions remained outstanding on seven additional IPR requests. In granting the stay, the Court recognized the judicial efficiency that would be served by not conducting this litigation in piecemeal fashion, as well as the potential benefits of allowing a parallel administrative proceeding to be resolved first. Dkt. No. 57 at 8-9.

The Court determined that it made sense to revisit the stay after the ALJ's Determination, because at that point, the landscape on the IPRs was likely to be clearer. Level-setting now, as set forth above, three patents in the ITC investigation remain subject to the mandatory stay requirement of 28 U.S.C. § 1659(a). In addition, the PTAB now has instituted IPR for seven of the eleven Asserted Patents, with the possibility of an eighth still being evaluated. The PTAB's guidance, like the ALJ's finding of invalidity on all three ITC-Instituted patents, is likely to streamline the issues for this Court.

Indeed, the Initial Determination – finding all three ITC-Instituted Patents invalid and two of them not infringed – illustrates the potential streamlining and/or record-building benefits of waiting for administrative proceedings to resolve. This is particularly true given that all the Asserted Patents cover closely related subject matter and have substantially overlapping claim language and inventorship. Conducting this litigation in piecemeal fashion while other parallel proceedings are ongoing creates a substantial risk of judicial inefficiency and inconsistent rulings. *See, e.g.*, *Gatekeeper Systems, Inc. v. Rocateq USA, LLC et al.*, Case No. 8:22-cv-02092-FWS-KES, at 6 (C.D. Cal. May 17, 2023) (granting motion to stay of entire action, including ITC-instituted patents and non-ITC patents, and observing that judicial economy favored a single trial, rather than proceeding on two tracks).

The *PAN* case, discussed above, is likewise instructive here. There, this Court denied Centripetal's motion to lift the stay, noting the potential of the IPRs to streamline the action and reduce the expense of the litigation. As the Court explained, the addition of IPR institutions on two additional patents since the prior stay order further weighed in favor of continuing the stay. Dkt. No. 317 at 2-3.[10]

Here, there is an even stronger argument for judicial efficiency as a basis for maintaining the stay, with seven (potentially eight) of eleven Asserted Patents subject to PTAB review. Further, as discussed above, one of the non-IPR-Instituted Patents (the '573 Patent) is related to one of the ITC-Instituted Patents (the '370 Patent), while the '009 Patent that is subject to the pending remand is related to the IPR-Instituted '572 Patent. Given this interrelatedness, the risk of inconsistent rulings is distinctly possible, making the rationale for continuing the stay that much stronger. Centripetal's brief is devoid of any discussion of these issues, asserting only in conclusory fashion

---

[10] Tellingly, in its Motion, Centripetal cites only to the *PAN* decision lifting the stay, which was *after* final written decisions had been issued on all IPRs. Motion at 4. It makes no mention of the Court's prior decision declining to lift the stay while the IPRs were still pending, which procedurally is more on-point with the posture of this case.

that "a stay would not simplify any issues with respect to these ['573 and '456] patents" and that "[a]ny argument that other Centripetal's [sic] patents under review may simplify the issue for those patents is entirely speculative." Dkt. No. 60, at 4-5; *see also Gatekeeper Systems*, Case No. 8:22-cv-02092-FWS-KES, at 6 ("While the overlap between the patent families is not perfect, the court agrees with Defendants that there appear to be higher-level similarities that may implicate shared prior art and technology, which may bear on invalidity contentions.").

Further, because the '573 Patent is related to the '370 Patent, it would create a substantial risk of inefficiency and/or inconsistent decisions if the Court were to proceed on one but not the other.[11] That would leave two remaining patents (or possibly even just one, if the '009 Patent IPR is instituted), and it would be highly inefficient and make little sense to proceed on just one or two of the eleven Asserted Patents.

Centripetal largely looks past the inefficiencies that would result from multi-track proposal and attempts to diminish the impact of the adverse decisions it is facing, including in the ITC. Centripetal makes a halfhearted attempt to downplay the Final Determination in the ITC, noting there are other independent claims of the '370 Patent "unaddressed" by the ITC, and further that the Final Determination will not have any binding effect on this Court on those claims or the two claims of the '370 Patent addressed in the ITC, and thus it "will *not necessarily* simplify issues in this case." Dkt. No. 60 at 4-5 (emphasis added). This argument misses the mark.

The fact that ITC decisions are non-binding does not make them irrelevant to this Court. Indeed, *Texas Instruments, Inc. v. Cypress Semiconductor Corp.*, which Centripetal cites, explains that a "district court can attribute whatever persuasive value to the prior ITC decision that the court

---

[11] To illustrate the significant overlap in claim terms between the '573 and '370 Patents, the claim comparison chart included herein as Appendix A shows each of the terms of independent claim 9 of the '573 Patent (which parallels the method and computer readable media independent claims 1 and 17) are incorporated nearly word-for-word into the terms of independent claim 22 of the '370 Patent.

considers justified." [12] *Texas Instruments, Inc. v. Cypress Semiconductor Corp.*, 90 F.3d 1558, 1569 (Fed. Cir. 1996). Elsewhere in that decision, the Federal Circuit further explained that "district courts are not free to ignore holdings of [the Federal Circuit] that bear on cases before them." *Id.* Likewise, any holding by the Federal Circuit regarding the ITC investigation will constitute stare decisis in this Court. *Powertech Tech. Inc. v. Tessera, Inc.*, 660 F.3d 1301, 1303-04, 1308 (Fed. Cir. 2011) ("Although the resolution of the ITC action will not have preclusive effect on either the district court in Texas or the district court in this case, both courts are nonetheless bound by stare decisis to abide by any legal precedents established by our court in [the asserted patent]").

In practice, district courts frequently find ITC decisions persuasive in subsequent litigation before them. *See, e.g.*, *Mentor Graphics Corp. v. Quickturn Design Sys.*, 999 F. Supp. 1388, 1393-94 (D. Or. 1997) (granting plaintiff's motion for preliminary injunction based in part on the ITC's prior decision); *Solomon Techs., Inc. v. Toyota Motor Corp.*, No. 8:05-cv-1702-T-MAP, 2010 U.S. Dist. LEXIS 23676, at *14-15 (M.D. Fla. Jan. 26, 2010) (granting summary judgment of non-infringement; finding "no 'powerful incentive' to deviate from the Federal Circuit's prior decision" affirming the ITC's finding of non-infringement; *Technology Properties Limited LLC and MCM Portfolio LLC v. Canon Inc. et al.*, No. C 14-3640 CW, Dkt. No. 479, 9 (N.D. Ca. Jan. 26, 2017) (granting summary judgment of non-infringement on same basis as prior ITC determination).

Continuing to press an argument that lost at the ITC can also lead to fee applications under Section 285. *See, e.g.*, *Technology Properties*, No. C 14-3640 CW, Dkt. No. 533, 5 (awarding Section 285 fees to defendant; after the ITC issued a determination finding non-infringement, district court granted summary judgment of non-infringement on same basis as ITC; citing the

---

[12] Centripetal also cites *In re Convertible Rowing Exerciser Patent Litig.* to support its argument on this issue. 721 F. Supp. 596, 603-04 (D. Del. 1989). In *In re Convertible Rowing*, the defendant moved for summary judgment of invalidity based solely on the Federal Circuit's affirmance of the ITC's determination on that issue. *Id.* The court found simply that the ITC's determination and Federal Circuit's affirmance were not binding on the court. *Id.* Here, neither party asserts that ITC determinations are binding. Thus, the holding in *Convertible Rowing* is inapposite.

ITC's decision as an indicator "to Plaintiffs [as to] the weakness of their claims" related to infringement; and finding"[i]t was unreasonable for Plaintiffs to believe that this Court would interpret the [claim] limitations in some way that would lead to a different outcome than the one the ITC reached.").

It should also be noted that while Centripetal focuses its argument on the '370 Patent, presumably because that is the only patent in the ITC for which it seeks to lift the stay following the Final Determination, there are two other patents, the '917 and '526 Patents, asserted in the ITC. Both are also the subject of instituted IPRs. To the extent either survives IPR, the proceedings before the PTAB and the ITC may inform discovery, claim construction and liability issues.  This also applies, by extension, to related patents, including the '062 Patent, which is a continuation of the '917 Patent.[13]

          **(iii)**       **Continuing The Stay Of The Entire Action Would Not Unduly Prejudice Centripetal.**

Next, Centripetal argues that it would be prejudiced if the stay of entire action continues, but its showing there is not credible. Specifically, while it contends the parties are "direct competitors," it does not offer *any* evidence to substantiate that assertion.[14] It also wholly ignores this Court's prior Stay Order, which found that Centripetal's prior license of its portfolio to Keysight indicated that damages would be an adequate remedy. Dkt. No. 57 at 11; *see also Centripetal Networks, Inc. v. Cisco Sys.*, Case No. 2:18cv94, 2019 U.S. Dist. LEXIS 231216, at *8 (E.D. Va. Feb. 25, 2019) (granting stay; "if a stay will not diminish monetary damages available to

---

[13] This comes into play on other patents too. For instance, the '009 Patent, for which the IPR institution decision is being reconsidered, is related to the '572 Patent, for which IPR has been instituted.

[14] In this regard, it is telling that Centripetal opted not to introduce a declaration from its principal Jonathan Rogers in support of its motion to lift the stay (or its prior opposition to Keysight's motion to stay), as it did twice in its action against Palo Alto, first in opposing Palo Alto's motion to stay pending IPRs and second in moving to lift the stay in that case. *See PAN*, Dkt. Nos. 84, 85, 302, 304.

plaintiffs, stays of such claims rarely prejudice plaintiffs" (citing *VirtualAgility Inc. v. Salesforce.com, Inc.*, 759 F.3d 1307, 1318 (Fed. Cir. 2014))).

Nothing has changed that would warrant a departure from that rationale, and that alone should end the inquiry on the potential unfair prejudice to Centripetal. Indeed, in its motion to lift the stay in the *PAN* case, Centripetal made similar allegations of competitive prejudice, but this Court nonetheless denied Centripetal's motion. *PAN*, Dkt. No. 317 at 2.

Centripetal also fails to reconcile how it would be prejudiced by continuing the stay with respect to the non-IPR-instituted patents but not by continuing the stay with respect to the IPR-instituted patents, which it concedes should continue to be stayed. This belies the notion that a portion of the case must proceed right away in order to prevent unfair harm to Centripetal. *See Gatekeeper Systems*, Case No. 8:22-cv-02092-FWS-KES, at 4 ("Plaintiff does not sufficiently explain why a delay in such relief is untenable as to [one category of] Patents but palatable as to the [other category of] Patents . . . .").

Moreover, though, courts in this District have also routinely recognized that "[d]elays based on statutory frameworks, such as those pursuant to IPR proceedings, do not normally cause undue prejudice." *Cisco Sys.*, Case No. 2:18cv94, 2019 U.S. Dist. LEXIS 231216 at *8-9 (citing *Cobalt Boats, LLC v. Sea Ray Boats, Inc.*, Case No. 2:15cv21, 2015 U.S. Dist. LEXIS 154693, 2015 WL 7272199, at *3 (E.D. Va. Nov. 16, 2015)). The same logic applies equally to ITC proceedings.

Turning to the purported competition, the evidence reveals it does not exist.[15] As discussed above, the only conceivable theory of competitive overlap would have been from Keysight's

---

[15] In the event that there is further briefing or motion practice directed to continuing the stay pending the ITC and/or IPR proceedings (e.g., after the ITC's Final Determination), Centripetal should be precluded from introducing any new evidence directed to prejudice, including any evidence relating to purported competition. Centripetal chose to proceed with its motion to lift the stay – even though it concedes that lifting the stay is not even ripe – and offered no evidence in support of its competitive prejudice assertions. As demonstrated above, no such competition exists. However, it would still be unfair to Keysight if Centripetal were permitted an opportunity to later supplement the record, thereby forcing Keysight to address a new round of assertions.

ThreatARMOR product. This is consistent with the only evidence adduced in the ITC regarding

competition – that is, years-old, stale material regarding ThreatARMOR. Regardless,

ThreatARMOR has been discontinued so it cannot form the basis for any legitimate competitive

harm moving forward.[16]

Turning to the other accused products, Keysight's accused Vision products are network

packet brokers, a category of products that Centripetal does not manufacture or sell. Nor does

Centripetal make or sell any testing products. It is unsurprising, therefore, that Centripetal has

never presented any evidence to any tribunal showing competition with those product categories.

A closer look at Centripetal's specific infringement allegations further demonstrates the

fallacy of its assertions of competition. Again, the only theoretical basis for competition was

Keysight's ThreatARMOR product, but Centripetal does not even accuse that product of infringing

the '456 or '009 Patents – two of the patents for which it argues the stay should be lifted. *See*

Compl., ¶¶ 276 and 304. For that matter, while Centripetal purports to accuse ThreatARMOR of

infringement of the related '370 and '573 Patents (*id*. at ¶¶ 69 and 245), it did not accuse

ThreatARMOR of infringing the '370 Patent in the ITC, so it is difficult to make sense of

Centripetal's positions.

Further focusing on the '370 Patent, the ALJ concluded that Centripetal's CleanINTERNET

product does not even practice that patent. In other words, Centripetal is tethering competitive

prejudice to a patent it does not even use. This makes little sense either.

The posture in which Centripetal brings its claims of prejudice as a basis to partially lift the

stay also bears further emphasis. Months after it filed this case, Centripetal elected to file the ITC

proceeding, and elected which patents to assert in that case (presumably selecting what it believed

---

[16] Centripetal's citation to the court's decision in the *Cisco* litigation regarding competition between Centripetal and Keysight does not constitute evidence of competition, regardless of how the License Agreement may have been characterized in the cited opinion. Motion, Dkt. No. 60, at 7. Keysight was not a party to that litigation and thus had no opportunity to rebut any erroneous representations of competition that may have been made.

to be its strongest patents), knowing the possibility that the non-ITC patents could be stayed in this case. Centripetal cannot now complain that its own choice, with its foreseeable result, is unfairly prejudicing it. *See Apple,* 2011 U.S. Dist. LEXIS 157340, at *11 n.17 ("The court concludes that the staying of the [related] cases will not prejudice Apple. Specifically, Apple decided to bring parallel actions in connection with these patents in the ITC despite the fact that the filing of complaints in both forums would result in a stay of the [main] case and, potentially, of related cases.").

Finally, Centripetal alleges in conclusory fashion that "[m]aintaining the stay after the Final Determination issues risks that memories and perceptions have eroded." Dkt. No. 60 at 8. But it raises no specific concerns; rather, it merely turns the argument back into one of competition and non-overlap of the patents, which, for the reasons discussed at length above, are not valid or even correct assertions. In any event, as this Court noted in its prior Stay Order, "general assertions of loss of evidence due to memories fading and witness unavailability are insufficient to justify a conclusion of undue prejudice." Dkt. No. 57 at 11.

Accordingly, this factor now even more strongly favors continuing the stay.

## III.    CONCLUSION

Maintaining the stay in its entirety will allow for a single district court proceeding to address all of the Asserted Patents upon conclusion of the ITC and PTAB proceedings, while preventing the necessity for duplicative discovery that would be required if this case and the parallel administrative cases proceed simultaneously. For these reasons, Keysight requests that the Court enter an order denying Centripetal's Motion To Lift Stay and Reopen the Case.

Dated: September 5, 2023                    Respectfully submitted,


                                            By:

                                            /s/_____
                                            William R. Poynter (VSB #48672)
                                            KALEO LEGAL

4456 Corporation Lane, Suite 135
Virginia Beach, VA 23462
Telephone: (757) 238-6383
Facsimile: (757) 304-6175
wpoynter@kaleolegal.com

Jonah D. Mitchell
jmitchell@reedsmith.com
Christine M. Morgan
Email: cmorgan@reedsmith.com
John P. Bovich
Email: jbovich@reedsmith.com
Seth Herring
sherring@reedsmith.com
Reed Smith LLP (CA-NA)
101 Second St
Suite 1800
San Francisco, CA 94105
Phone: (415) 543-8700
Fax: (415) 391-8269
PRO HAC VICE
*Counsel for Keysight Technologies, Inc.*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that I electronically filed the foregoing on September 5, 2023 with the

Clerk of Court using the CM/ECF system, which will send a notification of such filing to all

registered users.

By:   /s/  *William R. Poynter*
      William R. Poynter (VSB #48672)

      **KALEO LEGAL**
      4456 Corporation Lane, Suite
      135 Virginia Beach, VA 23462
      Telephone: (757) 238-6383
      Facsimile: (757) 304-6175
      Email:  wpoynter@kaleolegal.com