# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF VIRGINIA
# NORFOLK DIVISION

| | |
|---|---|
| CENTRIPETAL NETWORKS, LLC, f/k/a CENTRIPETAL NETWORKS, INC., | ) ) ) |
| Plaintiff, | ) No. 2:22-cv-00002-EWH-DEM ) ) |
| vs. | ) ) ) |
| KEYSIGHT TECHNOLOGIES, INC., | ) ) |
| Defendant. | ) ) ) ) |

**REPLY IN SUPPORT OF PLAINTIFF CENTRIPETAL NETWORKS, LLC'S
<u>MOTION TO LIFT STAY AND REOPEN THE CASE</u>**

## I. INTRODUCTION

The Court should lift the stay with respect to four patents[1] that are not the subject of instituted *Inter Partes* Review ("IPR") proceedings (the "Non-Instituted Patents") because there is unlikely to be any additional narrowing or clarification gained by delay. To the extent that any additional information is to be gleaned from the International Trade Commission ("ITC"), it will have occurred when the ITC issues its Final Determination. For the IPRs, it is speculative whether they will provide additional narrowing or clarification. Still, even to the extent they would, the Final Written Decisions will occur well before claim construction and dispositive motions would be resolved. To the extent that Centripetal appeals a decision with respect to any patent in the ITC, it agrees that the stay will not be lifted on this patent.

## II. ARGUMENT

There is no reason to maintain the stay as to the Non-Instituted Patents after the ITC issues its Final Determination. To the extent that the ITC proceeding could provide any narrowing or clarity on the meaning of any claims, that will be exhausted when a Final Determination is issued, and it is unlikely that a potentially lengthy appeal process would clarify the specific issues addressed in the Non-Instituted Patents. Furthermore, it is undisputed that at least three Non-Instituted Patents are free and clear from IPR proceedings and that at least two of those Non-Instituted Patents are free and clear from the ITC proceeding.

### A. The Factors Considered Do Not Favor a Continued Stay

#### 1. Judicial Efficiency Does Not Favor Lifting the Stay

Keysight argues that the stay should be continued because the ITC's Final Determination will clarify issues on the three patents asserted there. Opp. at 14-15. First, this is a moot point

---

[1] U.S. Patent Nos. 9,264,370 ("'370 Patent"), 10,659,573 ("'573 Patent"), 10,924,456 ("'456 Patent"), and 10,681,009 ("'009 Patent") do not have instituted IPR proceedings.

1

because the ITC decision is not binding on this Court and does not need to be considered. *Tex. Instruments Inc. v. Cypress Semiconductor Corp.*, 90 F.3d 1558, 1569 (Fed. Cir. 1996) ("The [ITC]'s findings neither purport to be, nor can they be, regarded as binding interpretations of the U.S. patent laws" and thus, do "not have res judicata or collateral estoppel effect" in district court) (quoting S. REP. No. 93-1298, 93rd Cong., 2d Sess. 196 (1974), reprinted in 1974 U.S.C.C.A.N. 7186, 7329); *In re Convertible Rowing Exerciser Pat. Litig.*, 721 F. Supp. 596, 603-04 (D. Del. 1989) (denied defendants' motion for summary judgment of invalidity despite prior ITC determination of no violation of section 337 based on invalidity). Second, Centripetal has moved to lift the stay only after the Final Determination is issued, meaning that any analysis from the ITC will already be in hand by the time the stay is lifted. Mot. at 1. Furthermore, Centripetal only moves to lift the stay on one of the patents asserted in the ITC—the '370 Patent, and only then if it decides not to appeal the decision on the '370 Patent. As such, there is no statutory basis to continue the stay. Keysight has not provided any specific basis for why the other two patents in the ITC are relevant for clarifying issues but instead just speculates that there could be some relevance based high-level similarities like common inventors.

Keysight argues that proceeding with the ITC case would somehow prevent inconsistent rulings, but its analysis is nonsensical. Opp. at 15. The ITC decision is not binding on this Court, and as such, there is no risk of contradictory opinions. Additionally, Centripetal is not asking to lift the stay on any claims that were still pending, making this issue moot. Keysight also does not point to any specific issues from the Initial Determination ("ID") that could impact this case and instead just relies on conclusory speculation that such inconsistent decisions could arise. Opp. at 15-17. For example, Keysight simply alleges that because "the '573 Patent is related to the '370 Patent," it would risk inefficiencies by inconsistent rulings. Opp. at 16.

2

However, Keysight does not explain how a non-binding decision from the ITC could provide inconsistent rulings, nor does it identify any specific issues that it anticipates will be the subject of inconsistent rulings. Keysight's argument that these rulings could be persuasive to this Court is similarly illogical for the same reasons stated above, but additionally, because the analysis from the ITC will already be disclosed in the Final Determination, which would be issued before the stay is lifted. Finally, Keysight makes vague assertions that claim construction issues will be clarified in the ITC proceeding without specifically pointing to any common claim terms to support its assertions.

For the IPRs, Keysight's argument that further information may be gleaned from related patents is unsupported and speculative. *SAGE Electrochromics, Inc. v. View, Inc.*, No. 12-cv-06441-JST, 2015 WL 66415, at *3 (N.D. Cal. Jan. 5, 2015) ("[T]he uncertainty surrounding whether the PTO will elect to institute IPR proceedings weighs against a finding of likelihood of simplification of the issues."); *Rensselaer Polytechnic Inst. v. Apple, Inc.*, No. 1:13-cv-0633-DEP, 2014 WL 201965, at *8 (N.D.N.Y. Jan. 15, 2014) ("I find that whether any issues attendant to this litigation may [sic] simplified through the IPR process is speculative primarily in light of the fact that the PTO has yet to accept or deny Apple's petitions for further review."); *Automatic Mfg. Sys., Inc. v. Primera Tech., Inc.*, No. 6:12-cv-1727, 2013 WL 1969247, *3 (M.D. Fla. May 13, 2013) ("[A] stay of a patent infringement action is not warranted when based on nothing more than the fact that a petition for *inter partes* review was filed in the USPTO."). The ID is available, and so are the initial determinations of the PTAB. Despite this, Keysight is unable to identify a single specific issue that will be resolved by these actions. Furthermore, in the event that any Final Written Decisions from an IPR will include additional information that is helpful to the Court, they will be issued well before the Court rules on any substantive issues. In

3

particular, the PTAB will begin to issue Final Written Decisions as early as December 2023, with the majority issued by the end of April 2024 and all remaining issued by August 2024. The timing of the Final Written Decisions means there will be ample time for a schedule making these decisions available before the Court holds a claim construction hearing or rules on any dispositive motions if discovery is opened sometime in December 2023.

That Keysight did not file IPR petitions against three of the four Non-Instituted Patents further undermines its position that additional information could be gained from the IPR proceedings that will meaningfully affect them. Indeed, this indicates that Keysight itself did not believe that IPR proceedings would yield fruitful results for these patents. Keysight should not be allowed to delay litigation of the Non-Instituted Patents under the hollow assertion that IPR proceedings of other patents will somehow meaningfully affect patents Keysight chose not to challenge in IPR.

### 2. Centripetal Suffers Undue Prejudice if the Stay is Not Lifted

Centripetal and Keysight are direct competitors in cyber security using threat intelligence, as detailed in Centripetal's complaint. Dkt. No. 1 at ¶¶ 9-12 (describing Centripetal's technology), 37-52 (describing Keysight's relevant technologies). Specifically, Keysight's Network Visibility Products include the AppStack technology, which includes Advanced Threat Intelligence (ATI) to match threat intelligence to specific network traffic.[2] Declaration of Kristopher Kastens in Support of Reply ("Kastens Reply Decl."), Ex. 1 at 3 ("AppStack ties capabilities back to Application and Threat Intelligence (ATI) to ensure up to date information on applications, geographies and more."). Similarly, Centripetal's CleanINTERNET product

---

[2] All of Keysight's accused products have AppStack technology with ATI, which was not limited to the ThreatArmor product. As such, Keysight's argument that the parties are not direct competitors because ThreatArmor was discontinued is without merit. Opp. at 18-20.

4

also includes the ability to leverage advanced threat intelligence to identify threats in a network. *Id.*, Ex. 2 at 2-3 ("Centripetal leverages over 100 sources that contain over 3,500 cyber threat intelligence feeds . . . [t]his technology is central to delivering the dynamic intelligence used in CleanINTERNET®.") Furthermore, Centripetal's products also provide advanced visibility into network traffic, which is also provided by Keysight's accused products. *Id.*, Ex. 3 at 2 (customer stating that "Centripetal CleanINTERNET(R) provided visibility across their branch offices . . . "). Given this critical overlap in technology, the companies are competitors.

While the Network Visibility Products and Centripetal's CleanINTERNET do not share every single same feature—no products do—they overlap in this critical aspect of leveraging advanced threat intelligence. Centripetal presented substantial evidence of this overlap during the first litigation between the parties, and there is no legitimate dispute on this issue. Keysight's technology continues unabated in the marketplace, and a monetary award is therefore insufficient to remedy harm to Centripetal.

Contrary to Keysight's assertions, the ALJ's findings regarding Centripetal practicing the '370 Patent are irrelevant to the overall competition. Opp. at 20-21. Indeed, nothing from the ITC is binding on this Court. Keysight also ignores that the ALJ's determination is related to a single patent and is inapplicable to the other patents. Keysight does not provide any justification for why this decision would apply to any of the other patents asserted[3]—especially in light of the fact that the ALJ determined that Centripetal practiced the other two patents asserted. As such, Keysight has no legitimate basis to assert that the parties do not compete.

---

[3] In its ID, the ALJ's determination was based on a specific element regarding "device" not being met but this element as stated in the Claims of the '370 Patent is not present in any of the other asserted patents, and is not required in other independent claims in the '370 Patent.

5

### 3. A Stay Significantly Risks Prejudice to Timeliness of Relevant Discovery

Keysight alleges that Centripetal has not shown that Centripetal would be prejudiced because of evidence being lost and memories fading. Opp. at 21. Specifically, it argues that Centripetal did not identify what specific evidence is being lost. However, Keysight ignores that Centripetal cannot know with specificity what information is currently being lost because the case is stayed. If the case continues to remain stayed, it is certainly plausible—and probable—that memories will fade and the likelihood that more witnesses will be unable to recollect specific facts regarding many key issues in the case will increase. Furthermore, cybersecurity involves a highly mobile workforce, and more of Keysight's relevant employees are likely to have moved jobs—making obtaining information from them even more difficult. As such, Centripetal is prejudiced by such a high risk of lost evidence.

### B. This Case is Different From When the PAN Case was Stayed

Contrary to Keysight's argument, this case will not be in a similar position as the *PAN* case was when the court continued the stay. Opp. at 1-2. In the *PAN* case, the defendant showed that the instituted patents would provide new information or clarity as to the other non-instituted patents. *See* Kastens Reply Decl., Ex. 4, *Centripetal Networks, LLC v. Palo Alto Networks, Inc.*, No. 2:21-cv-00137 (EWH), Dkt. No. 317 at *2-3 (E.D. Va. Nov. 7, 2022) ("*PAN*"). Here, Keysight has not shown that the case will benefit from waiting for Final Written Decisions. In fact, there are already eight Final Written Decisions against Centripetal's patents,[4] and the PTAB has already considered many issues related to claim construction and the relevant prior art.

---

[4] These include the Final Written Decisions in IPR2021-01147, IPR2021-01148, IPR2021-01149, IPR2021-01150, IPR2-21-01152, IPR2021-01157, IPR2021-01158, and IPR2022-00182.

Keysight has not identified anything that the PTAB has not already addressed that would make these IPRs unique.

That a higher percentage of Asserted Patents are under IPR in this case than were in the *PAN* when the stay was continued is irrelevant. Opp. at 2. In the *PAN* case, the stay was continued because the overlap in issues between the asserted patents and the non-instituted patents was significant. Kastens Reply Decl., Ex. 4, *PAN*, Dkt. No. 317 at 2-3. However, Keysight has not tied any of the issues pertaining to the instituted patents to the issues pertaining to the Non-Instituted Patents. If relevant issues were being addressed, Keysight has sufficient information to address these issues from the institution decisions. Further, it has not shown that issues that will be addressed in the IPR proceedings have not already been resolved in the eight Final Written Decisions that were already issued regarding Centripetal's patents based on the IPRs filed by PAN.

## III. CONCLUSION

For the foregoing reasons, Centripetal respectfully requests the Court lift the stay of the case as to the Non-Instituted Patents upon the ITC's Final Determination.

                                                      Respectfully submitted,

Dated: September 8, 2023          By: */s/ Stephen E. Noona*
                                                   Stephen E. Noona
                                                   Virginia State Bar No. 25367
                                                   KAUFMAN & CANOLES, P.C.
                                                   150 West Main Street, Suite 2100
                                                   Norfolk, VA 23510
                                                   Telephone: (757) 624-3239
                                                   Facsimile: (888) 360-9092
                                                   senoona@kaufcan.com

                                                   Paul J. Andre (*pro hac vice*)
                                                   Lisa Kobialka (*pro hac vice*)
                                                   James R. Hannah (*pro hac vice*)
                                                   Kris Kastens (*pro hac vice*)
                                                   Hannah Y. Lee (*pro hac vice*)
                                                   KRAMER LEVIN NAFTALIS
                                                    & FRANKEL LLP
                                                   333 Twin Dolphin Drive, Suite 700
                                                   Redwood Shore, CA 94065
                                                   Telephone: (650) 752-1700
                                                   Facsimile: (650) 752-1800
                                                   pandre@kramerlevin.com
                                                   lkobialka@kramerlevin.com
                                                   jhannah@kramerlevin.com
                                                   kkastens@kramerlevin.com
                                                   hlee@kramerlevin.com

                                                   *Attorneys for Plaintiff,*
                                                   Centripetal Networks, LLC

## **CERTIFICATE OF SERVICE**

I hereby certify that on September 8, 2023, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will automatically send notification of filing electronic to all counsel of record.

> */s/ Stephen E. Noona*
> Stephen E. Noona
> Virginia State Bar No. 25367
> KAUFMAN & CANOLES, P.C.
> 150 West Main Street, Suite 2100
> Norfolk, VA 23510
> Telephone: (757) 624-3239
> Facsimile: (888) 360-9092
> senoona@kaufcan.com

9